UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
SALMA BERRECHID,                                           :
                    Plaintiff,      :  **MEMORANDUM DECISION AND**
                                                           :  **ORDER**
       - against -                                :
                                                           :  20-cv-5342 (BMC)
COMMISSIONER OF SOCIAL SECURITY,                           :
                                                           :
                    Defendant.      :
                                                           :
---------------------------------------------------------- X

**COGAN**, District Judge.

      1.      Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not "disabled" as defined in the Social Security Act for the purpose of receiving disabled widow's insurance benefits under Title II of the Act. The ALJ found that plaintiff had severe impairments of right shoulder arthritis, asthma, depression and anxiety, and breast cancer. The ALJ nevertheless found that plaintiff has the functional capacity to perform "light work" with the following physical restrictions: only occasional climbing, balancing, stooping, kneeling, crouching, crawling, and reaching in all directions with her right arm. The ALJ also found that plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, and poorly ventilated areas; and plaintiff's mental impairments limit her to simple work in a low contact setting involving only occasional interaction with coworkers, supervisors, or the public.

      2.      Plaintiff raises two points of error challenging the ALJ's determination of her residual functional capacity, one relating to the ALJ's assessment of her physical limitations and the other relating to the ALJ's assessment of her mental limitations.

**Physical Impairments**

       3.      At the outset, I note that at the administrative hearing, plaintiff came very close to waiving any claim of disability based on her physical conditions as opposed to her mental condition. Her attorney told the ALJ:

> [I]t's our contention that as of now the colon cancer, and the cancer disorder, would preclude her from working, but these records aren't supported back [before the date last insured], which is why we're aligning ourselves with the psychiatric impairments that show that the claimant's condition prevent[ed] her from working back in 2018 since her alleged onset date. . . .
>
> [The cancer] only started up again four months ago, so, therefore it's not something that's been in existence for 12 months, which is why we're sticking with the psychiatric impairments.

In her attorney's fairly extensive direct examination at the hearing, counsel only tangentially asked plaintiff about any of the physical impairments she raised in this review proceeding, potentially leading the ALJ to believe that plaintiff was only pressing her mental impairments as the ground for disability. Nevertheless, since the ALJ did not find a waiver of her claim for disabling physical impairments and the Commissioner has not asserted one, I will consider the argument.

       4.      Plaintiff's objection to the ALJ's analysis of her physical condition is narrow and technical. She contends that the ALJ should not have found the opinion of a consulting examiner, Dr. Ram Ravi, persuasive because it was too vague. Specifically, plaintiff contends that Dr. Ravi's report used the term "moderate" to describe plaintiff's limitations as to standing, walking, lifting, carrying, pushing, or pulling. Plaintiff asserts that terms of graduated severity like "moderate" are too vague to allow the ALJ to infer any particular RFC. Plaintiff contends that if the ALJ wanted to rely on Dr. Ravi, she should have gone back to Dr. Ravi and had him

2

make particularized findings as to how much of each limited activity plaintiff could perform on a consistent basis in the workplace, rather than just saying "moderate" limitations.

5.   Plaintiff's argument is not without some attraction. A number of Second Circuit cases have criticized using the term "moderate" in a consulting examiner's report to infer RFC. See e.g., Burgess v. Astrue, 537 F.3d 117, 128-29 (2d Cir. 2008); Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), superseded by regulation on other grounds, 20 C.F.R. § 404.1560(c)(2). However, a careful reading of these cases shows that the concern about relying too much on medical reports that use that term has occurred almost entirely in one of three contexts: (1) where the ALJ held that it was sufficient to overcome the treating physician rule, see Burgess, 537 F.3d at 128-29; or (2) where the consultant's report did not include observations of plaintiff's ability to undertake specific activities, Curry, 209 F.3d at 123; or (3) where the other evidence in the record was inconsistent with the ALJ's interpretation of what a "moderate" impairment would permit, see id. at 123-24. As the Commissioner points out, where these concerns are not present, courts in this circuit regularly sustain ALJ determinations that rely on medical reports using these terms in evaluating RFC. See, e.g., Bates v. Berryhill, No. 17-cv-3311, 2018 WL 2198763, at *11 (E.D.N.Y. May 14, 2018); Nelson v. Colvin, No. 12-cv-1810, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014) (citing Lewis v. Colvin, 548 F. App'x 675, 677 (2d Cir. 2013)).

6.   None of those concerns are present here. First, this is a post-treating physician rule case, so the ALJ only needs to consider the totality of the evidence, and need not give particular deference to a treating doctor's medical opinion. See 20 C.F.R. § 404.1520c(a).

7.   Second, Dr. Ravi's observations give meaning to his use of the term "moderate." He found that plaintiff had full strength in both her upper and lower extremities, stable and non-tender joints, normal grip strength, and no muscle atrophy. Dr. Ravi also found that although

3

plaintiff had some discomfort with standing, she did not need a cane or walker to stand or walk, nor did she need help getting on or off the examination table, and could stand up from a chair with no problem. Thus, even if Dr. Ravi had not used any terms of graduated severity, the ALJ could have considered these observations in assessing RFC. And, in fact, she did. Most of the limitations on light work that the ALJ imposed derived from Dr. Ravi's specific observations.

8. Finally, the ALJ did not let Dr. Ravi's use of the term "moderate" overshadow the other evidence in the record. A lot of corroboration for the ALJ's assessment of plaintiff's RFC came from plaintiff herself. Plaintiff testified or stated that she could drive – in fact, she noted that she had driven 45 minutes to a doctor's appointment – as well as use public transportation. She also had no problem taking care of her personal needs like bathing, shaving, dressing, hair styling, eating, shopping in brick-and-mortar facilities, and picking up her child from school.

9. The record also contained other medical corroboration for Dr. Ravi's observations. Plaintiff had gone to a rheumatologist, Dr. Nancy Solomon, before Dr. Ravi examined her. Dr. Solomon's findings were essentially normal and in tandem with Dr. Ravi's findings. Most of the physical findings from other professionals and tests were essentially normal – that is, they showed the existence, but not the severity, of the impairments that the ALJ found.

10. It is thus clear why plaintiff's counsel at the administrative hearing did not advocate for a finding of disability based on plaintiff's physical impairments. In any event, I reject plaintiff's contention that the ALJ improperly weighed Dr. Ravi's evaluation.

4

**Mental Impairments**

11.     Plaintiff attacks two findings by the ALJ that materially contributed to her determination that plaintiff's anxiety and depression did not render her disabled.  First, the ALJ found "unpersuasive" the two medical source statements of plaintiff's treating psychiatrist, Igor Kirzhner, M.D.  Second, the ALJ accepted the analysis of the consulting psychologist, Lucy Kim, except, notably, for Dr. Kim's opinion that: "The results of the examination appear to be consistent with psychiatric problems and this may significantly interfere with the claimant's ability to function on a daily basis."

12.     No doubt, acceptance of Dr. Kirzhner's medical source statements would have pointed strongly to a finding of disability.  He opined that plaintiff has a limited ability to maintain a reasonable work pace, sustain a work routine, and maintain customary attendance and punctuality.  He also found that she has a marked restriction for interacting appropriately with supervisors, co-workers, and the public, and for responding appropriately to usual work situations and changes in a routine work setting.  Those are serious limitations.

13.     Plaintiff correctly argues that notwithstanding the withdrawal of the treating physician rule, the amended regulations, in requiring consideration of various factors, include consideration of the length of the relationship between the claimant and her medical source.  See 20 C.F.R. § 404.1520c(c)(3)(i).  That will usually weigh in favor of accepting the opinion of the treating physician.  Here, however, the ALJ's decision not to accept Dr. Kirzhner's opinions is supported by the fact that, as the ALJ discussed, his opinions were both internally inconsistent and inconsistent with the bulk of other evidence in the record.

14. Plaintiff's motion contends that the ALJ's analysis of the contradictions between Dr. Kirzhner's treatment notes and medical source statements amounts to cherry picking the facts. I disagree. I have reviewed the notes of plaintiff's treatment by Dr. Kirzhner, and, as the ALJ concluded, there is nothing in them even hinting at the degree of impairment suggested by Dr. Kirzhner's medical source statements. The treatment notes are benign. Aside from plaintiff's self-reporting of crying and insomnia, Dr. Kirzhner's notes reflect consistent findings of intact recent and remote memory, normal speech patterns, normal thought content and rate, good abstract reasoning, and normal thought associations. Plaintiff also acknowledged that she did well with medications, and although she testified at the hearing to some side effects, there is nothing in the medical records that even mentions these alleged side effects. Clearly, Dr. Kirzhner's records support the ALJ's finding that plaintiff has a generalized anxiety and depressive disorder, but in terms of severity, I cannot discern the source of Dr. Kirzhner's very severe opinions about her functional capacity.

15. The ALJ's determination not to accept the last line of Dr. Kim's assessment is also fully supported by the rest of her report. The report finds, at worst, mild mental impairments:

> There is mild limitation to sustain an ordinary routine and regular attendance at work, regulating emotions, controlling behavior, and maintaining well being. There is no evidence of limitation for the following: Understanding, remembering and applying simple/complex directions and instructions, use reason and judgment to make work-related decisions, interact adequately with supervisors, coworkers and the public, sustain concentration and perform a task at a consistent pace, maintain personal hygiene and appropriate attire, awareness of normal hazards and taking appropriate precautions. Difficulties are caused by psychological symptoms.

6

Dr. Kim's conclusion was thoroughly supported by her observations listed earlier in the report. If this was the only evidence in the case, one would have to conclude that plaintiff is not disabled.

16. But then, at the end of this medical source statement, Dr. Kim inserted the sentence that the ALJ found "inconsistent" with the other evidence in the case: "The results of the examination appear to be consistent with psychiatric problems and this may significantly interfere with the claimant's ability to function on a daily basis." I do not know where Dr. Kim's statement came from, but it isn't reflective of anything in her report. The ALJ thus had a basis for finding that this statement was inconsistent, not only internally but also with other evidence in the record.

17. Considering the anomalies in both Dr. Kirzhner and Dr. Kim's medical source statements, it is plain that the ALJ relied more heavily on the other evidence in the record than on the medical opinion evidence. That is something the law allows her to do. See 20 C.F.R. §§ 404.1520(e), 416.920(e).

18. This other evidence was more than substantial. Aside from demonstrating plaintiff's responsiveness to medication, the record shows that during the period of her claimed disability she had three appointments with another psychiatrist, Dr. Jean Tropnas. Dr. Tropnas's findings from the first appointment, although difficult to read, parallel those of Dr. Kirzhner a year later – plaintiff had a neat appearance, coherent thoughts, was in a pleasant mood, was alert and oriented, and had a normal attention span and concentration. The second appointment's notes were about the same, except they state that plaintiff was anxious. The record of the third appointment is similar but describes plaintiff as "upbeat." When plaintiff ran out of the medication Dr. Tropnas prescribed for her, she stopped using it for about a year. She only

7

restarted it after she began seeing Dr. Kirzhner. In addition to this evidence, plaintiff's daily activities, see ¶ 8, supra, which the ALJ discussed at length, are also inconsistent with a disabling level of anxiety and depression.

19. Finally, plaintiff reiterates her criticism of Dr. Kim's medical source statement because of her use of the term "mild." There is more ambiguity, however, when a medical professional uses the term "moderate," or worse, "mild-to-moderate" or "moderate-to-severe." "Mild," in contrast, can only mean that the impairment exists, but it is not serious – that is because there is no term of graduated severity that can imply any less of an impairment than "mild."

20. If the ALJ was going to conclude that plaintiff was disabled, she would have had to have based that finding almost entirely on plaintiff's self-reporting and testimony and on Dr. Kirzhner's unsupported medical source statements. Perhaps the ALJ could have done so, but she did not have to. Because there is substantial evidence in the record for the ALJ's conclusion, there are no grounds for a remand.

21. Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion is granted. The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
October 27, 2021

8